# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| ABANTE ROOTER AND PLUMBING, INC., individually and on behalf of a class of all persons and entities similarly situated,, | ) ) ) ) ) | CIVIL ACTION NO. 1:15-cv-03562-AT |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| BIRCH COMMUNICATIONS, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT BIRCH COMMUNICATIONS, INC.'S MOTION FOR SUMMARY JUDGMENT

JONES DAY

Gregory R. Hanthorn
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309.3053
Telephone:  (404)521-3939
ghanthorn@jonesday.com

*Attorneys for Defendant Birch
Communications, Inc.*

SPENCER FANE LLP

Gardiner B. Davis
1000 Walnut Street
Suite 1400
Kansas City, MO 64106
Telephone: (816) 474-8100
gdavis@spencerfane.com

*Attorneys for Defendant Birch
Communications, Inc.*

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION AND SUMMARY ........................................................... 1

II.     FACTS ....................................................................................................... 2

     A.      Abante Rooter's Failure To Produce Evidence Of Concrete Harm .............................................................................................. 3

     B.      The System That Placed the Calls ................................................ 5

III.    ARGUMENT ............................................................................................. 7

     A.      The Record Evidence Refutes The Existence Of Subject Matter Jurisdiction ..................................................................... 8

          1.      There Is No Subject Matter Jurisdiction Without a Concrete, Personal, and Individual Injury ................................. 9

          2.      The Undisputed Facts Confirm That Abante Rooter Has No Concrete, Personal, and Individual Injury .......................... 9

          3.      *Spokeo* and Its Eleventh Circuit Progeny Confirm That a Statutory Violation Is Not Itself a Concrete Injury ................ 11

          4.      None of Abante Rooter's Arguments Identifies Any Concrete Injury In This Case .................................................... 13

     B.      The Record Evidence Refutes That The Calls Were Placed Using an ATDS ........................................................................ 18

          1.      Abante Rooter's Claim Depends On Proving the Calls In Question Were Placed Using an ATDS ................................... 18

          2.      The System at Issue Does Not Meet the Statutory Definition of an ATDS ............................................................. 19

          3.      Abante Rooter's Putative Expert Testimony Cannot Rescue Its Claim ...................................................................... 22

IV.     CONCLUSION .......................................................................................... 23

# TABLE OF AUTHORITIES

Page

CASES

*ACA Int'l v Federal Communications Commission and United States of America*,
Case No. 15-1211 (D.C. Cir. 2016) ................................................................21

*Am. States Ins. Co. v. Capital Assocs. of Jackson Cty., Inc.*,
392 F.3d 939 (7th Cir. 2004) ..........................................................................17

*Aranda v. Caribbean Cruise Line, Inc.*,
No. 12 C 4069, 2016 WL 4439935 (N.D. Ill. Aug. 23, 2016) ...........................16

*Caudill v. Wells Fargo Home Mtg., Inc.*,
Civ. No. 5:16–066, 2016 WL 3820195 (E.D. Ky. July 11, 2016) .....................17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...........................................................................................7

*Dominguez v. Yahoo, Inc.*,
629 Fed. Appx. 369 (3rd Cir. 2015) ................................................................19

*Evers v. Gen. Motors Corp.*,
770 F.2d 984 (11th Cir. 1985) .........................................................................23

*Hewlett v. Consol. World Travel, Inc.*,
Civ. No. 2:16-713 WBS AC, 2016 WL 4466536 (E.D. Cal. Aug. 23, 2016) ......................................................................................................16

*Lee v. Gulf Coast Collection Bureau,Inc.*,
No. 8:13–cv–2276–T–24–MAP, 2014 WL 6978760 (M.D. Fla. Dec. 10, 2014)...................................................................................................19

*Legg v. Voice Media Group, Inc.*,
    13-62044-CIV-COHN, 2014 WL 1767097 (S.D. Fla. May 2, 2014) ...............22

*Mais v. Gulf Coast Collection Bureau, Inc.*,
    768 F.3d 1110 (11th Cir. 2014) ........................................................21

*Marks v. Crunch San Diego, LLC*,
    55 F. Supp. 3d 1288 (S.D. Cal. 2014)................................................23

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)........................................................................7

*Murphy v. DCI Biologicals Orlando, LLC*,
    797 F.3d 1302 (11th Cir. 2015) ........................................................21

*Nicklaw v. Citimortgage, Inc.*,
    No. 15-14216, 2016 WL 5845682 (11th Cir. Oct. 6, 2016) .......................passim

*One River Place Condo. Ass'n, Inc. v. Axis Surplus Ins. Co.*,
    629 F. Supp. 2d 613 (E.D. La. 2009)................................................17

*Palm-Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
    781 F.3d 245 (11th Cir. 2015) ........................................................15

*Romero v. Dep't Stores Nat'l Bank*,
    Case No. 15-CV-193-CAB-MDD, 2016 WL 4184099 (S.D. Cal.
    Aug. 5, 2016) ............................................................................17

*Smith v. Aitima Med. Equip., Inc.*,
    Case No. EDCV16-00339-AB(DTBx), 2016 WL 4618780 (C.D.
    Cal. July 29, 2016) ......................................................................17

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)...............................................................passim

*Strauss v. CBE Group, Inc.*,
    173 F. Supp. 3d 1302 (S.D. Fla. 2016)..............................................23

*United States v. Knoll*,
    785 F.3d 1151 (7th Cir. 2015) ..........................................................................22

*United States v. Nine Hundred Sixty Thousand Dollars in U.S.*
*Currency*,
    307 Fed. App'x. 251 (11th Cir. 2006) ..................................................................8

*Walker v. Darby*,
    911 F.2d 1573 (11th Cir. 1990) ...........................................................................7

*Walker v. Transworld Sys., Inc.*,
    No. 8:14–cv–588–T–30MAP, 2015 WL 631390 (M.D. Fla. Feb.
    13, 2015) ............................................................................................................19

### CONSTITUTION

Article III of the United States Constitution......................................................passim

### STATUTES

47 U.S.C. §§  227*, et seq.* .................................................................................passim

### OTHER AUTHORITIES

2015 FCC Omnibus Order, 30 FCC Rcd. 7961 (2015) ..........................................21

Fed. R. Civ. P. 12(h)(3)......................................................................................8, 13

Fed. R. Civ. P. 56(a)................................................................................................7

## I.   <u>INTRODUCTION AND SUMMARY</u>

This motion concerns the claims of the putative class representative, Abante Rooter and Plumbing, Inc. ("Abante Rooter"), based on phone calls placed to one of its 16 corporate cell phone lines.  As to two separate essential elements of its claim – and with discovery now closed – Abante Rooter has failed to meet its burden of producing evidence sufficient to create a genuine issue for trial. Therefore, summary judgment is appropriate, and the action should be dismissed.

***First***, Abante Rooter has failed to produce evidence sufficient to support federal subject matter jurisdiction.  Under the Constitution, subject matter jurisdiction requires an actual case or controversy, and there is no case or controversy unless the plaintiff can show real, concrete harm.  Moreover, the Supreme Court and the Eleventh Circuit Court of Appeals have now confirmed that the violation of a statutory right is not, by itself, enough to create the type of particularized, individual harm that must be shown.

Here, the undisputed facts show no concrete harm.  Abante Rooter suffered zero economic loss, and its phone line was never exclusively occupied; it always remained available for other calls.  Furthermore, as a corporation, and as a matter of law, Abante Rooter is incapable of incurring any loss of "privacy," "seclusion,"

"convenience" or any similar interest.  For this reason alone, summary judgment and dismissal are required.

   ***Second***, Abante Rooter cannot meet its burden as to the essential element that the calls it received were made by means of an "automatic telephone dialing system," as required by the pertinent statute.  Uncontroverted testimony by the company that provided the system in question shows that the system does not possess features that the statutory definition of "automatic telephone dialing system" requires.

   Against this straightforward eyewitness testimony, Abante Rooter musters nothing more than an "ignorance-is-bliss" opinion by a putative expert who (i) has failed to even look at the system in question or any manuals showing its features, and (ii) purports to apply a definition different from and contrary to the plain statutory language.  This putative expert opinion is addressed in the *Daubert* motion filed herewith and – in any event – is insufficient to overcome the uncontroverted, direct, fact evidence in this case.

## II.   FACTS

   Plaintiff Abante Rooter is a California corporation with a history of collecting unwanted telephone calls and then asserting them as the basis for multiple class actions across the country.  (Plaintiff's Response to the Defendant's

First Set of Interrogatories at 11, (attached hereto as Ex. A).)  During the events at issue, Abante Rooter was maintaining 16 separate cell phone lines (9/6/2016 Deposition of Abante Rooter through Fred Heidarpour ("Heidarpour Dep."), at 91:6-9 (attached hereto as Ex. B))[1] and is a Plaintiff in four other TCPA cases arising from calls to those lines.  (*Id*. at 11:3-9; 81:6-8; 111:13-20.)

Abante Rooter filed this particular action on October 7, 2015, alleging violations of the Telephone Consumer Protection Act ("TCPA" or the "Act").  (*See* Doc. 1.)

### A.  ABANTE ROOTER'S FAILURE TO PRODUCE EVIDENCE OF CONCRETE HARM

This motion addresses Abante Rooter's own claims.  After initially alleging just a single call, Abante Rooter now asserts that it received four calls placed on behalf of Defendant Birch Communications, Inc. ("Birch").  What is missing, however – with fact discovery now closed – is any evidence that any call resulted in any actual harm to the corporation.  Instead, the record confirms that the corporation suffered no cognizable harm.

Abante Rooter has failed to offer any witness who actually remembers the calls.  Although the Complaint alleges that "Plaintiff" answered the phone and

---

[1] The complete Heidarpour Deposition appears in the record as Doc. 59.

purports to detail what transpired on the call (Doc. 1, ¶¶ 22-27), Abante Rooter's owner admitted at deposition that he does not remember the call and cannot even say with certainty that he took it or, if he did not, then who might have done so. (Heidarpour Dep., at 29:5-18 & 36:19-37:5.)

No other witness for Abante Rooter has testified concerning the calls, either. There is therefore no witness who can testify that any of the calls worked any particular ill on the corporation.

Moreover, there is uncontroverted documentary evidence that at least one of the calls was characterized as "beautiful." A record produced by Meehan Marketing, the outsourced telemarketing company that actually placed the calls, showed that the September 22, 2015 call referenced in the Complaint was answered by a woman (and thus not by Mr. Heidarpour) and was a "beautiful call" during which the recipient actually "requested email" for further information. (9/26/2016 Deposition of Stephanie Meehan ("Meehan Dep."), at 32:10-24 (excerpts attached hereto as Ex. C)[2]; Ex. 54 to Meehan Dep. (attached hereto as Ex. D).)[3]

---

[2] The complete Meehan Deposition appears in the record as Doc. 60.

[3] Although annoyance to any individual is irrelevant to Abante Rooter's claim, its owner's testimony shows that the features of telemarketing that he finds annoying never actually occurred in this case. Mr. Heidarpour specifically

What is more, the cell phone calls in question – unlike faxes – did not exercise any exclusive occupation of the phone line.  There is uncontroverted evidence that the receiving telephone could, while the calls at issue were occurring, continue to receive other calls; the other calls could either be taken or go to voice mail.  (10/21/2016 Expert Report of Ben Levitan ("Levitan Report"), at 8-9, (attached hereto as Ex. E.))[4]

Finally, the undisputed evidence shows affirmatively that the call did not cause any economic harm.  Abante Rooter's owner conceded that the cell phone line in question had an unlimited calling plan.  Thus, the corporation did not incur charges for any call at issue.  (Heidarpour Dep., at 96:10-100:5; Ex. 38 to Heidarpour Dep. (attached hereto as Ex. F).)

## B.    THE SYSTEM THAT PLACED THE CALLS

As mentioned above, the calls to Abante Rooter were actually made by an outsourced telemarketing company ("OTC") called Meehan Marketing

---

complained that telemarketers hide their actual telephone numbers to falsely reflect the caller's location, and manipulate the caller identification to show the recipient's own phone number.  (Heidarpour Dep., at 33:3-19.)  The record is clear that neither such annoyance occurred in this case.  For example, Abante Rooter's owner admits that thev callback number he used accurately reflected Birch's area code and not the Abante Rooter's own corporate number.  (*Id.*)

[4] The Expert Report of Ben Levitan, which was also attached as Exhibit G to Doc. 58, was sworn under penalty of perjury and notarized.  (See Ex. G to Doc. 58 at p. 12.)

("Meehan").  Under an agreement between Birch and Meehan, Meehan provided

Birch with batches of "leads" – phone numbers of businesses that Meehan

proposed to call on Birch's behalf.  (Deposition of Birch Communications, Inc.

through Mike Otting ("Otting Dep."), at 43:4-9, 47:10-49:9, excerpts attached

hereto as Exhibit G.)[5]  Birch would "scrub" each list by running it through Birch's

"suppression process" – also known as a "lead database" – to remove numbers that

Birch did not want to be called.  (*Id.*)  The scrubbed lists would then be returned

for Meehan to call.[6] (*Id.*)

Abante Rooter alleges, as it must, that Meehan used an "automatic telephone

dialing system" ("ATDS") to place the calls.  (*See* Doc. 1.)  The use of an ATDS is

an essential element of Abante Rooter's TCPA claims.  The TCPA defines an

ATDS as "equipment which has the capacity to store or produce telephone

numbers to be called, using a random or sequential number generator; and to dial

such numbers."  (47 U.S.C. § 227(a)(1).)

Meehan testified, however, that the system it used does not employ a

random or sequential number generator.  (Meehan Dep., at 13:7-14:21.)

---

[5] The complete Otting Deposition appears in the record at Doc. 61.

[6] There is evidence that, in some cases, OTCs placed calls to numbers that Birch did not scrub or authorize.  This is significant to class certification and the putative class claims, but not to this motion for summary judgment.

Specifically, the dialing system Meehan used is called Five9. Meehan supplied the list of numbers; Five9 did not produce or generate them. As Meehan explained, the lists "can't be random because they have to be in a certain area and they have to be businesses." (*Id.*, at 14:7-10.)   The lists were also not sequential. (*Id.*, at 13:22-24.)  Further, a Rule 30(b)(6) witness for Five9 explained the ███████████ ████████████████████████████████████████ ████████████████████████████ (Deposition of Five 9 through Barry O'Sullivan, ("O'Sullivan Dep. ") at 13:7-13, (attached hereto as Ex. H) (provisionally filed under seal).)

### III.   <u>ARGUMENT</u>

Summary judgment is appropriate whenever a plaintiff fails to produce evidence sufficient to create a genuine issue of material fact as to every essential element of its claim. Fed. R. Civ. P. 56(a).  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  At the summary judgment stage, the plaintiff cannot rely on its pleadings or merely raise some metaphysical uncertainty.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  It must produce evidence, and a mere scintilla will not suffice.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

Here, Abante Rooter has failed to produce the required evidence as to two essential elements—subject matter jurisdiction and the use of an ATDS. Each of these failures is a separate and independent ground for summary judgment.

## A.   THE RECORD EVIDENCE REFUTES THE EXISTENCE OF SUBJECT MATTER JURISDICTION.

The first essential burden for Abante Rooter is to establish subject matter jurisdiction, including Article III standing. *United States v. Nine Hundred Sixty Thousand Dollars in U.S. Currency*, 307 Fed. App'x. 251, 255 (11th Cir. 2006) (noting that "standing is not a mere pleading requirement but, rather, is an indispensable part of a claimant's case"); *see also* Fed. R. Civ. P. 12(h)(3). Although this Court previously held that Abante Rooter's allegations were sufficient to survive a motion to dismiss, the standing issue arises afresh at summary judgment. *Nine Hundred Sixty Thousand Dollars in U.S. Currency*, 307 Fed. App'x. at 255 (noting that standing "must be supported in the same way as any other matter on which the claimant bears the burden of proof."). Furthermore, the legal test is now heightened by the Supreme Court's holding in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) as well as Eleventh Circuit precedent applying *Spokeo*.

### 1.     There Is No Subject Matter Jurisdiction Without a Concrete, Personal, and Individual Injury.

Article III of the United States Constitution confers subject matter jurisdiction only where there is a live case or controversy, and there is no case or controversy unless the plaintiff can show some "injury in fact" – an injury to itself that is both concrete and particularized.  *Spokeo*, 136 S. Ct. 1544-45.  "Concrete" means the injury must be "*de facto*"; it must actually exist; it must be real and not merely abstract.  *Id.* at 1548.  "For an injury to be 'particularized,' it must 'affect the plaintiff in a personal and individual way.'"  *Id.* Absent such injury there is no standing and no federal subject matter jurisdiction.

### 2.     The Undisputed Facts Confirm That Abante Rooter Has No Concrete, Personal, and Individual Injury.

Birch previously showed, in its brief opposing class certification (Doc. 58), the facts confirming that Abante Rooter has ***not*** suffered the requisite concrete and particularized harm.  Tellingly, Abante Rooter's class certification reply brief (Doc. 64), failed to challenge these facts, and they remain undisputed.

First, no one – not Abante Rooter's owner, nor any of its personnel, nor any human being at all – has testified to any recollection of receiving the calls at issue. Thus, no individual recalls any "invasion," "inconvenience," or "annoyance" to

herself individually (which would be irrelevant, in any event, to the claim by Abante Rooter), much less to the corporation.[7]

Second, the one call as to which there is actual evidence as to content did **not** cause "annoyance" or "invasion" to anyone.  The OTC's internal report, which stands uncontroverted, describes a "beautiful" call in which the recipient actually requested a follow-up email for more information.

Third, further demonstrating the lack of any annoyance or invasion, Abante Rooter's owner testified as to the two specific telemarketing practices that annoy him personally:  (1) displaying false information as to the location from which the call is being made; and (2) falsely showing the recipient's own phone number as the caller identification.  Neither one occurred here.

Fourth, the undisputed facts demonstrate there was no exclusive occupation of any Abante Rooter telephone line.  Unlike faxes, cell phone calls do not block other transmissions.  They do not cause busy signals.  Other calls will still come in and can either be taken or go to voice mail.[8]

---

[7] As explained below, Abante Rooter, being a corporation and thus an inanimate legal fiction, is simply not capable of experiencing "annoyance," "inconvenience," or "invasion of privacy."

[8] Although Abante Rooter's reply brief on class certification quibbled over the semantics of "exclusive occupation," it did not dispute the facts, including the well known facts regarding how cell phones receive calls.  (Doc. 64, p. 7.)

Finally, putting to rest any notion of real economic harm, Abante Rooter admits that the telephone plan for the line in question provided unlimited calling. (Heidarpour Dep., at 96:10-100:5; Ex. 38 to Heidarpour Dep.)  The corporation did not incur any extra charge as a result of the calls in question.

### 3.    *Spokeo* and Its Eleventh Circuit Progeny Confirm That a Statutory Violation Is Not Itself a Concrete Injury.

Trying to avoid these undeniable facts showing no concrete harm, Abante Rooter continues to argue the alleged statutory violations are, by themselves, enough.  (*E.g.* Doc. 64, p. 4 (relying on this Court's **pre-*Spokeo*** Order holding that "a violation of the TCPA itself provides a concrete injury"); Doc. 1, ¶ 39; Doc. 54, p. 17.)  The problem with this argument is that the Supreme Court – and later the Eleventh Circuit – squarely rejected it.

The *Spokeo* decision holds that, although Congress may elevate to legally cognizable status a concrete injury that did not previously hold such status, this power is limited insofar as there still ***must actually be some concrete injury***:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. ***Article III standing requires a concrete injury even in the context of a statutory violation***. For that reason, ***[plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III***.

*Spokeo*, 136 S. Ct. at 1549 (emphasis added).

The Eleventh Circuit has taken this *Spokeo* holding as meaning what it says and has applied it accordingly.  For instance, in *Nicklaw v. Citimortgage, Inc.*, No. 15-14216, 2016 WL 5845682, at *3 (11th Cir. Oct. 6, 2016) the appellate court ordered an action dismissed due to lack of subject matter jurisdiction where the plaintiff alleged a clear statutory violation (delay by the defendant bank in recording that plaintiff had satisfied a mortgage) and statutory damages but failed to show any concrete harm.  The Eleventh Circuit recognized that, under *Spokeo*, it could not assume the existence of concrete injury merely because a statutory right was violated.  Rather, "***the relevant question is whether [plaintiff] was harmed*** when [the] statutory right was violated." *Nicklaw*, 2016 WL 5845682, at *3 (emphasis added).

In other words, the Eleventh Circuit, as required by *Spokeo*, now rejects the notion that a statutory violation can, by itself, constitute harm sufficient to create standing.  Congress does not have the power to, by a mere statute, override the constitutional "case and controversy" requirement.  Therefore, as stated in *Nicklaw*:

> the requirement of concreteness under Article III is ***not*** satisfied every time a statute creates a legal obligation and grants a private right of action for its violation. … ***A plaintiff must***

> **suffer some harm or risk of harm from the statutory violation**
> to invoke the jurisdiction of a federal court.

*Id*. (emphasis added).

As shown above, showing actual harm or risk of harm is precisely what Abante Rooter cannot do.

### 4.    None of Abante Rooter's Arguments Identifies Any Concrete Injury In *This* Case.

Given these controlling points – that (1) the Constitution requires concrete harm as a prerequisite to standing and thus to subject matter jurisdiction; (2) the undisputed facts establish Abante Rooter has not suffered any concrete harm; and (3) the Supreme Court has now done away with Abante Rooter's previous theory that it could just assume concrete harm based on the statutory violation – Abante Rooter must resort to throwing out various red herrings.  None of them rescues Abante Rooter's claim.

***First***, Abante Rooter repeatedly suggests that this Court has previously, finally, once-and-for-all, decided the standing issue.  (*See* Plaintiff's Reply Brief in Support of Its Motion for Class Certification, Doc. 64.)  Not so.  For one thing, lack of subject matter jurisdiction requires dismissal no matter when it is discovered.  Fed. R. Civ. P. 12(h)(3).

-13-

Moreover, the Court's previous holding addressed a motion made under the lenient motion-to-dismiss standard and without the benefit of discovery. The order came before Birch uncovered and documented the above-listed facts – that Abante Rooter suffered no economic damages, no exclusive occupation of its phone line, no intrusion, annoyance, or invasion of privacy – which reveal the complete absence of any concrete harm to the Abante Rooter corporation.

Equally important, the previous holding could not have taken *Spokeo* or the Eleventh Circuit's *Nicklaw* holding into account because it predated both of those decisions. Indeed, *Spokeo* speaks directly to this case. Before *Spokeo*, this Court held that "[t]he invasion of [Abante Rooter's] statutory right established by the TCPA is itself a concrete harm." (Order, dated Jan. 7, 2016, at 6 (Doc. 27), citing *Palm-Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 245, 1251-53 (2015).) Now, however, *Spokeo* and *Nicklaw* supplant this holding. *Spokeo*, 136 S. Ct. at 1549 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right[.]"); *Nicklaw*, 2016 WL 5845682, at *3 ("Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation.")

In short, *Spokeo* and *Nicklaw* require a fresh look.  And this time, it is absolutely clear that "***the relevant question***" for determining standing is not whether the statute was violated but *" whether [plaintiff] was harmed*[.]" *Nicklaw*, 2016 WL 5845682, at *3 (emphasis added).  Discovery has established that the answer to this question is "no."  Abante Rooter has not been harmed.

**Second**, Abante Rooter appears set to rely once again on the *Palm Beach Golf Center* decision even though that decision is pre-*Spokeo* and even though discovery here has revealed that it is inapposite.  In *Palm Beach Golf Center*, the Eleventh Circuit found concrete injury for standing purposes in the exclusive occupation of the plaintiff's fax line and resulting inability to receive other faxes during that occupation.  *Palm Beach Golf Ctr.*, 781 F.3d at 1253.  Here, because a cell phone is involved there is no such exclusive occupation.  Instead, uncontroverted evidence shows that the line allegedly involved could have sent other incoming calls to "call waiting" (had a live person been taking the call), or to voice mail.[9]  (Levitan Report, at 9.)  These distinguishing facts were not

---

[9] In fact, the Eleventh Circuit expressly noted the differences between "junk fax" cases and cases involving cell phones and that those differences are important. For example, in cases involving fax transmissions, it may be unnecessary to prove the common-law elements of vicarious liability.  Direct liability may attach to the fax advertiser even absent proof of an agency relationship between the advertiser and the person that actually sent the fax.  This is not the case in cell phone cases. *Palm Beach Golf Ctr.*, 781 F.3d at 1256-57.

established a year ago when this Court ruled on the motion to dismiss.  But now they are clear in the post-discovery record, and they set this case apart.

*Third*, Abante Rooter has provided a laundry list of TCPA cases purportedly addressing the "concrete injury" requirement.  (Doc. 54, at 9, n.3.)  But actually reading the cases shows that they involve *individual* plaintiffs – not a *corporation* like Abante Rooter – and the supposedly concrete harms are identified as "irritation," "annoyance," and "invasion of privacy," which a corporate plaintiff cannot incur or claim.  *E.g.*, *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2016 WL 4439935, *6  (N.D. Ill. Aug. 23, 2016) ("Congress enacted the TCPA to protect *consumers* from the *annoyance, irritation, and unwanted nuisance* of telemarketing phone calls, granting protection to consumers' identifiable concrete interests in preserving their rights to *privacy and seclusion*.") (emphasis added); *Hewlett v. Consol. World Travel, Inc.*, Civ. No. 2:16-713 WBS AC, 2016 WL 4466536, at *2 (E.D. Cal. Aug. 23, 2016) ("Courts have consistently held that allegations of *nuisance and invasion of privacy* in TCPA actions are sufficient to state a concrete injury under Article III.") (emphasis added).

For corporations, the rights to privacy and seclusion do not exist. "[B]usinesses lack interests in seclusion. It is not just that they are 'open for business' and thus welcome phone calls and other means to alert them to profitable

opportunities. It is that corporations are not alive.") *Am. States Ins. Co. v. Capital Assocs. of Jackson Cty., Inc.*, 392 F.3d 939, 942 (7th Cir. 2004); *see also*, *One River Place Condo. Ass'n, Inc. v. Axis Surplus Ins. Co.*, 629 F. Supp. 2d 613, 617 (E.D. La. 2009). Thus, the cases discussing finding concrete harm ***to individuals*** in the alleged violation of such rights do not help Abante Rooter's claim here as a corporation.

Furthermore, the cases Abante Rooter cites are frequently distinguishable for the additional reason that they involved numerous repeated phone calls the effects of which were specifically remembered and alleged. *Caudill v. Wells Fargo Home Mtg., Inc.*, Civ. No. 5:16–066, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (finding concrete harm in invasion of privacy, stress, anxiety, aggravation, etc. caused by receiving up to four calls a day over a four-year period). Here, by contrast, Abante Rooter alleges a total of four calls, none of which anyone even remembers. Such costless, unremembered events are not concrete harm. *See Romero v. Dep't Stores Nat'l Bank*, Case No. 15-CV-193-CAB-MDD, 2016 WL 4184099, at *5 (S.D. Cal. Aug. 5, 2016) (dismissing claim for lack of subject matter jurisdiction under *Spokeo*: "It does not follow … that an individual who receives one call to her cell phone using an ATDS suffers a concrete harm."); *Smith v. Aitima Med. Equip., Inc.*, Case No. EDCV16-00339-AB(DTBx), 2016

-17-

WL 4618780, at *4-*5 (C.D. Cal. July 29, 2016) (concluding that TCPA was aimed at "systematic" not merely "episodic" intrusions; that "a single call … surely cannot be considered systematic"; and that such single call was "too de minimus to satisfy the standing doctrine's core aim of improving judicial decision-making").

## B.    THE RECORD EVIDENCE REFUTES THAT THE CALLS WERE PLACED USING AN ATDS.

Another essential element as to which Abante Rooter bears the burden is that of showing the calls in question were placed using an ATDS within the meaning of the Act.  Abante Rooter cannot satisfy this burden either.

### 1.    Abante Rooter's Claim Depends On Proving the Calls In Question Were Placed Using an ATDS.

The statutory provision on which Abante Rooter relies – 47 U.S.C. § 227(b)(1)(A)(iii) – applies only to calls placed using an ATDS.

> It shall be unlawful …
>
> (A) *to make any call* (other than a call made for emergency purposes or made with the prior express consent of the called party) *using any automatic telephone dialing system or an artificial or prerecorded voice* …
>
> (iii) to any telephone number assigned to a … cellular telephone service … unless such call is made solely to collect a debt owed to or guaranteed by the United States;

47 U.S.C.A. § 227(b)(1)(A)(iii) (emphasis added).  There is no allegation here that

any call used an artificial or prerecorded voice.  Thus, Abante Rooter's claim

hinges on demonstrating that the system used to place the calls was an ATDS.  *See*

*Walker v. Transworld Sys., Inc.,* No. 8:14–cv–588–T–30MAP, 2015 WL 631390,

at *2 (M.D. Fla. Feb. 13, 2015); *Lee v. Gulf Coast Collection Bureau,Inc.,*, No.

8:13–cv–2276–T–24–MAP, 2014 WL 6978760, at *2 (M.D. Fla. Dec. 10, 2014).

### 2.    The System at Issue Does Not Meet the Statutory Definition of an ATDS.

The Act itself supplies the definition of an ATDS – a definition that

specifically requires a random or sequential number generator.

> (1) The term "automatic telephone dialing system" means equipment which has the capacity—
>
> (A) to store or produce telephone numbers to be called, ***using a random or sequential number generator***; and
>
> (B) to dial such numbers.

47 U.S.C.A. § 227(a) (emphasis added).  Thus, an ATDS must be able to generate

random or sequential numbers, store or produce them to be called, and actually dial

the numbers that it stores or produces with a random or sequential number

generator.  *See, e.g., Dominguez v. Yahoo, Inc.*, 629 Fed. Appx. 369, 373, n.1 (3rd

Cir. 2015) ("[T]he statutory definition is explicit that the autodialing equipment

may have the capacity to store or to produce the randomly or sequentially generated numbers to be dialed.")

Here, the record shows without dispute that the equipment used to place calls to Abante Rooter did not employ a random or sequential number generator. Meehan Marketing, the OTC that placed the calls, did so using the Five9 dialer, into which it loaded pre-scrubbed lists of numbers. (Meehan Dep., at 20:16-23.) The pre-scrubbed lists did not, and could not, contain random or sequential numbers, since all such lists that Birch provided were targeted towards certain regions and were business numbers. (*Id.*, at 13:15-14:21.) What is more, uncontroverted testimony from the provider of the Five9 system shows ████ ████████████████████████████████████████████████████████ █████████████████████████████ (O'Sullivan Dep., at 13:7-13.)

These facts stand uncontroverted. They show that the system employed to call Abante Rooter was not an ATDS under the statute.

Seeking to evade these plain facts and law, Abante Rooter points to a 2003 Federal Communications Commission ("FCC") order that purports to expand the statutory definition. But Congress did not delegate to the FCC the authority to interpret, much less expand, the TCPA's definitions. In 47 U.S.C. § 227(b)(2) the TCPA listed appropriate areas in which the FCC could "prescribe regulations to

-20-

implement the requirements of this subsection."  The definition section, 47 U.S.C.

§ 227(a), is not included in these listed areas.  While exemptions and similar

matters addressed in section 227(b)(1) may be addressed by the Commission, the

definition of an ATDS may not.

Not surprisingly, then, the FCC's attempted expansion is being challenged in

a case now pending before the Court of Appeals for the District of Columbia

Circuit,[10] which has jurisdiction to overrule the FCC.  If and when the Court of

Appeals does overrule the Commission and enforce the statute as written – as it

should – this Court should follow the Court of Appeals and rule that the Five9

system used to call Abante Rooter is not an ATDS.  *See Murphy v. DCI*

*Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015).  That order and

opinion will then be an additional, alternative, independent ground for summary

judgment.[11]

---

[10] *See ACA International v. Federal Communications Commission*, Case No. 15-1211 in the United States Court of Appeals for the District of Columbia Circuit (argued orally Oct. 19, 2016) (consolidated appeals from *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015)).

[11] At a minimum, to the extent this Court may not have authority to overturn or set aside the FCC's 2015 Order, pursuant to *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014) and *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015), given that the validity of the

### 3.   Abante Rooter's Putative Expert Testimony Cannot Rescue Its Claim.

In conjunction with its reliance on the FCC order expanding the definition of "ATDS" beyond what the statute permits, Abante Rooter also relies on putative expert testimony by Jeffrey Hansen.  This reliance is misplaced.  As shown in more detail in the accompanying *Daubert* Motion to Exclude Testimony of Plaintiff's Putative Expert, Mr. Hansen's opinions are inadmissible, and in any event they are insufficient to carry Abante Rooter past summary judgment.

As shown more fully in Birch's *Daubert* motion, Mr. Hansen's opinions on the ATDS issue are not supported by sufficient facts. He has failed to inspect the Five9 system in question, to review any of its manuals, or to consider the eyewitness testimony that shows the system lacks the technical capacity to generate numbers randomly or sequentially.  (*See, e.g.,* Report of Jeffrey Hansen, 7/6/2016, ("Hansen Report") at 5-6, 14 (excerpts attached hereto as Ex. I); 11/9/2016 Deposition of Jeffrey A. Hansen ("Hansen Dep."), at 42:1-5, 75:13-20, & 76:20-24 (excerpts attached hereto as Ex. J)).   Indeed, Mr. Hansen's proposed opinions are so bereft of factual support they amount to nothing more than legal arguments attempting to expand the statutory definition.  For these and other

2015 FCC Order is pending before the D.C. Circuit Court of Appeals, this Court should wait until a decision is made by the D.C. Circuit.

reasons, as shown in Birch's *Daubert* motion, Mr. Hansen's opinions are inadmissible.  *E.g.*, *United States v. Knoll,* 785 F.3d 1151, 1156 (7th Cir. 2015) ("experts generally may not offer legal opinions[.]"); *Legg v. Voice Media Group, Inc*., 13-62044-CIV-COHN, 2014 WL 1767097, at *4 (S.D. Fla. May 2, 2014)(Cohn, J.) (excluding expert testimony that the dialer used was an ATDS); *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1293 (S.D. Cal. 2014) ("[E]xpert testimony opining on legal questions is irrelevant and therefore not a basis for this Court's ruling. Expert opinions are only relevant on a motion for summary judgment if it helps determine the existence of a dispute of material fact, a situation not present here.") (rejecting testimony of Mr. Hansen).

Furthermore, even if the Hansen testimony were not absolutely excluded, its flaws prevent it from carrying any weight against the direct, uncontroverted testimony of percipient witnesses.  This is not the first time a plaintiff has tried to avoid summary judgment by throwing conclusory "expert" testimony against undisputed facts.   Courts, however, see through such tactics and reject them.  *E.g.*, *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986–87 (11th Cir. 1985); *Strauss v. CBE Group, Inc.*, 173 F. Supp. 3d 1302 (S.D. Fla. 2016) (finding that Mr. Hansen's proffered expert report was insufficient to create a genuine issue of material fact regarding whether an ATDS was used).

-23-

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Birch's Motion for Summary Judgment should

be granted and this action should be dismissed with prejudice.

JONES DAY                                      SPENCER FANE LLP

*/s/ Gregory R. Hanthorn*                       */s/ Gardiner B. Davis*
Gregory R. Hanthorn                           Gardiner B. Davis
    (Ga. Bar No. 323937)                           Admitted *pro hac vice*
1420 Peachtree Street, N.E., Suite 800         1000 Walnut Street, Suite 1400
Atlanta, GA  30309.3053                        Kansas City, MO 64106
Telephone:  404.521.3939                       Telephone:  816.474.8100
Facsimile:   404.581.8330                      gdavis@spencerfane.com
ghanthorn@jonesday.com                         ***Counsel for Defendant***
***Counsel for Defendant***